### GONSOULIN'S HEIRS v. GULF CO.

(Circuit Court of Appeals, Fifth Circuit. May 27, 1902.)

#### No. 1,131.

1. ADVERSE POSSESSION—CONFLICTING SPANISH GRANTS—TITLE BY PRESCRIPTION.

> Defendant claimed a tract of land in Louisiana under a Spanish grant and survey made in 1802. This grant was sold and conveyed twice prior to 1810, being described in both conveyances as containing the whole of the island known as "Belle Isle." Under such name the grant was absolutely confirmed in 1811 by the board of land commissioners appointed under act of congress of March 3, 1807, the claimant being then in actual possession. The title of such claimant became vested in defendant in 1898 through mesne conveyances, its grantors having been in the actual and continuous occupancy of the entire tract at least since 1827. Plaintiffs claimed under a Spanish grant and order for survey to their ancestor, made in 1783, of the island called "Belle Isle." This grant was presented to, and approved by, the land commissioners appointed under Act 1807, and in 1816 was confirmed by congress. It was surveyed under contract with the state, and the plat and field notes of such survey were approved by the surveyor general in 1842. By this survey the grant included the lands claimed by defendant. In 1878 a patent was issued to plaintiffs based on such survey. The confirmatory act of 1816 provided for the issuance of patents for unsurveyed grants, thereby confirmed, on surveys to be thereafter made. *Held*, that plaintiffs acquired full title under their grant as early as the approval of the survey in 1842, the patent subsequently issued thereon being merely evidence of such title, and that pleas by defendant of prescription of both 10 and 30 years, under the statutes of Louisiana, were properly sustained to a petition for recovery of the land filed in 1898.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

The heirs of Gonsoulin (the plaintiffs in error) brought this action, June 30, 1898, against the Gulf Company (the defendant in error), a New Jersey corporation, in the district court of St. Mary's parish, where the land claimed is situated. The action was removed by the defendant into the circuit court of the United States. The original petition is in the customary form for a petitory action for real property, and describes the land involved as follows: "A tract of land called 'Belle Isle,' consisting of section nineteen (19), township seventeen (17) south, range eleven (11) east, nineteen hundred and eighteen and 75/100 acres; section twenty-eight (28), township seventeen (17) south, range ten (10) east, nine hundred and seven and 63/100 acres; sec-

tion one (1), township eighteen (18) south, range ten (10) east, one hundred and thirty-seven and 76/100 acres; and section two (2), township eighteen (18) south, range ten (10) east, sixteen and 44/100 acres,—all lying in the parish of St. Mary, fronting on Wax Bayou, and lying on the Atchafalaya Bay, in the Southwestern land district of Louisiana, parish of St. Mary."

The defendant for peremptory exception pleaded prescription of 10 and 30 years. Thereafter the defendant appeared, and disclaimed title and possession of all that portion of the property claimed in the plaintiffs' petition lying east of Doctor's Bayou, being that portion of section 19 of township 17 south, range 11 east, lying east of Doctor's Bayou. The case came on to be heard on these pleas, and the court charged the jury peremptorily to find for the defendant on its pleas of prescription. It was shown on the trial that the land in dispute was granted in 1783 by the Spanish government to the ancestor of the plaintiffs and certain associates of his at that time, the description of the land as shown in the grant being "an island called 'Belle Isle,' on the bay of Atchafalaya, about four leagues west of the mouth of the Atchafalaya, and thirty-two leagues from Attakapas, said island containing about one league in front by the ordinary depth." The defendant claims that the natural boundaries of the island are Wax Bayou on the north and west, Doctor's Bayou on the east, and the Atchafalaya Bay on the south; that all of the land within these limits, consisting of about 400 acres of highland, and from 1,500 to 2,400 acres of trembling prairie, or marsh land, has always been known as "Belle Isle"; and the defendant claims that the land within these limits is what it now claims to own and possess, and what all its predecessors in title and possession have claimed and possessed since 1802. On May 2, 1763, Gov. Miro, of the Spanish colony of Louisiana, issued an order of survey, directing the surveyor general of the province to put Francois Gonsoulin and his associates in possession of an island called "Belle Isle," etc. The claim founded upon this order for survey was under the act of congress of March 3, 1807, presented to the board of commissioners for the examination of land titles provided for by that act. By that board the claim was placed in what it termed "Class B," which the board declared, in its opinion, should be confirmed by congress. All claims marked "B" on this report of the commissioners were confirmed by an act of congress of date April 29, 1816. Under a contract of October 10, 1837, A. F. Rightor and Andrew McCullom, deputy surveyors, appear to have surveyed this claim, and there are found in the record the field notes of that survey. The field notes of the survey were approved on August 1, 1838, by H. T. Williams, surveyor general of Louisiana, and when the map of the survey had been completed the surveyor general indorsed his approval thereon under date of December 8, 1842; but on the 23d day of the same month he made a note on the plat of the survey that since the approval of the map it appeared by the testimony of the chain carriers that the surveys, under the contract of October 10, 1837, were but partially made in the field. It distinctly appears that this survey as shown in the field notes of Rightor and McCullom, deputy surveyors, approved by Surveyor General Williams on August 1, 1838, and shown in the map and plat of that survey (indorsed, as above noted, December 8 and 23, 1842), furnished the description which O. H. Brewster, surveyor general of Louisiana, examined and approved on April 22, 1878; for his report recites: "The following being the description of the surveys taken from approved field notes of A. F. Rightor and Andrew McCullom, deputy surveyors, and embodied in the patent which issued on the 21st of August, 1878." On July 30, 1802, an order of survey was issued by Moralis, the intendant of the province, for 371 superficial arpents, in favor of Samuel Watson, on the island known as "Belle Isle," in the county of Attakapas, in the bay of Atchafalaya. This land was surveyed by the surveyor general of the province on November 8, 1802. Watson made settlement on this property prior to December 20, 1803, and thereafter remained in possession until his title was devested by a judicial sale made to one Kershaw by the parish judge on February 27, 1808, the formal deed of the judge being dated July 25, 1809. In this deed the property is described as "the tract or parcel of land known by the name of 'Belle Isle,' situated

near the mouth of the Atchafalaya," and the sale was made of "all the above-described tract or parcel of land situated as aforesaid, containing the whole island of 1,500 acres, more or less." On July 24, 1809, Kershaw sold this property by warranty deed to Henry Johnson by the same description. On August 5, 1809, Johnson sold the property by quitclaim deed to Walter Brashear. Brashear, claiming under Watson, presented his claim to Belle Isle to the board of land commissioners appointed to examine, confirm, and report on titles of Louisiana under the acts of congress approved March 3, 1807. On July 22, 1811, the board confirmed this grant absolutely, as they had the power to do, and were directed to do under the act, as to all persons who were in actual possession of property under grants from the Spanish or French governments prior to December 20, 1803. Brashear remained in possession of the land, claiming the whole of the island as owner, until he died, in 1860. After his death the property passed into the possession and ownership of his heirs. On April 24, 1869, Belle Isle was sold, together with other property, by the United States marshal for the district of Louisiana, to one R. B. Lawrence under a writ or fi. fa. issuing from the circuit court in the case of "Warfield and Others v. Heirs of Walter Brashear," and on April 30th the marshal executed his deed for the same in due form. Under this deed Lawrence went into possession of the island, and remained in possession thereof until July 20, 1892, when he sold to one R. B. Withers, who went into possession and held it as owner, in person or by his tenants, until May 15, 1897, when he sold it to G. A. Dorwin. A. F. Lucas, who under a contract with Withers had an interest in the mineral rights of the island, sold his interest to Dorwin by a deed dated May 17, 1897. Withers made his home on the island, and was living there with his wife when Dorwin bought. Dorwin went into possession of the whole island, and lived there, conducting borings and examinations for minerals. On March 31, 1898, he sold the whole of the island to the defendant company, who went into possession thereof.

B. K. Miller, for plaintiffs in error.

E. H. Farrar, B. F. Jonas, and E. B. Kruttschnitt, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The assignment of errors presents substantially but two propositions for our consideration, the first of which is that the United States did not part with its title to the land sued for herein until the issuance of its patent to the plaintiffs' ancestor, in 1878, and there had been no prior severance of said land or property from the public domain; second, that the court erred in holding that the defendant or any of the authors of its title had held or enjoyed such possession of the said land or property as is or would be sufficient to support or acquire a title to the same, under the Civil Code of Louisiana, by prescription or adverse possession; that the only claim of right under which said property was ever at any time held by any of the persons upon whose supposed title or possession the defendant relies was to such right, title, and interest as may have been had in said property by the vendor or author from whom the several parties in question purchased; that a party who owned such a title does not possess as owner, and hence his possession is not sufficient to operate a title by prescription, however long may be its duration, and that the court erred in not so holding; and that under the whole of the evidence and testimony offered and intro-

duced on the trial of the cause the defendant could not maintain its claim to title by the prescription of 10 years established by the Civil Code of Louisiana.

As is shown in the foregoing statement of the case, the plaintiffs' title had its origin in the Spanish grant made in 1783, and from a careful consideration of the treaty of cession from France to the United States of the Louisiana territory, and of the different sections of the act of March 3, 1807, respecting claims to lands in the territories of Orleans and Louisiana (2 Stat. 440), and of the preamble and section 1 of the act of April 29, 1816 (3 Stat. 328), it may well be doubted whether the land claimed by the plaintiffs in error ever belonged to the United States, or that the title thereto was ever in the United States, in the sense now suggested by the plaintiffs in error. But, however that may be, it seems clear to us that by the act of 29th of April, 1816 (the preamble and the first section of which, in effect, say of the claim of these plaintiffs that their title and claim to the land "be, and the same are hereby, confirmed," and the provision of the third section is "that in all cases not provided for by law for patent certificates to issue, every person, and the legal representative of every person, whose claim to a tract of land is confirmed by this or any former act, and who has not already obtained a patent certificate for the same, shall, whenever his claim shall have been located and surveyed according to law, be entitled to receive from the register of the land office at Opelousas, in the state of Louisiana, * * * a certificate stating that the claimant is entitled to a patent for such tract of land by virtue of this act"), and by the survey of the land embraced in the plaintiffs' claim, duly made by authorized surveyors, and approved on August 1, 1838, by H. T. Williams, surveyor general of Louisiana, and an authenticated plat of the land as thus surveyed having been approved by the surveyor general on December 8, 1842, at this last date, if not before, the full title to the land in question became vested in the grantees, and the patent when issued upon the same survey, more than 30 years thereafter, added nothing to their right, and served only as more convenient evidence of the title already and long theretofore held by them. There is no substantial conflict in the testimony that those under whom the defendant holds have had continuous, exclusive possession of the land involved in this suit, and embraced in the plaintiffs' title, from some time in the year 1827 to June 30, 1898, the date of the filing of this suit. Therefore the defendant's claim of title under the prescription of 30 years is clearly and fully established, and justified and required the trial judge to give the peremptory instruction directing the jury to find for the defendant.

Here our consideration of this case might, and probably should, close; but, as we have considered the other proposition involved in the assignment of errors, we may be allowed to observe that the deed of the 25th of July, 1809, by the judge of the parish court of Attakapas, describes the land which had been seized to be "all that tract or parcel of land known by the name of 'Belle Isle,' situated near the mouth of the Atchafalaya, in the parish aforesaid"; and

the granting clause declares that the grantor does, in consideration of the premises recited, "grant, bargain, sell, assign, and set over to the said John N. Kershaw, his heirs and assigns, all the above-described tract or parcel of. land, situated as aforesaid, containing the whole island of 1,500 acres, more or less," etc.; and the deed from Kershaw to Johnson also declares that the grantor "hath granted, bargained, and sold, and by these presents doth grant, bargain, and sell, unto the said Henry Johnson, his heirs and assigns, all that certain tract of land called the island of 'Belle Isle,' situated near the mouth of the river Atchafalaya, in the parish aforesaid, containing 1,500 acres, more or less, together with all the appurtenances and advantages whatsoever thereunto belonging or in any wise appertaining; * * * and the said John N. Kershaw, for himself and his heirs, the said tract or parcel of land, and every part thereof, against him and his heirs, and against every other person or persons whatsoever, to the said Henry Johnson, his heirs and assigns, will forever warrant and defend." Under these deeds Walter Brashear held, when, on the 1st day of May, in the year 1822, the heirs of Gonsoulin and others brought suit against him in the district court of the Fifth district, parish of St. Mary, in which they "represent that, notwithstanding their right and title to the said land, a certain Walter Brashear, of the parish of St. Mary, has entered upon the said tract of land and taken possession of the same." After the death of Walter Brashear, under the judgment against his heirs rendered by the circuit court for the district of Louisiana fieri facias duly issued and was levied upon the property of the estate of Walter Brashear, including the land in controversy, and was duly sold and conveyed by the marshal for the district of Louisiana to Robert B. Lawrence as the purchaser, the deed being in the due and customary form for judicial sales, and expressing "that I, the said marshal, in consideration of the premises, and by virtue of the law in such case made and provided, do sell and transfer the said above-described property [with the exception above noted] to the said Robert B. Lawrence," etc. These conveyances appear to us to undertake to pass the land itself, or all property in the land, to the grantees, and cannot in reason, or as we read them in the light of the Louisiana decisions, be held to be in any sense quitclaim deeds, or such as are not translative of property, and not adequate to support the claim of the 10-year limitations provided by the laws of Louisiana. If these deeds are conveyances translative of property such as, with proper proof of possession, will support the claim under the 10-year statute of limitations, the defendant's claim under that statute is abundantly made out, and thereby the peremptory instruction given by the trial judge was also not only justified, but required.

Finding no error in the judgment of the circuit court, it is affirmed.