LEVY v. GAUSE.

(36 South. 684.)

No. 15,010.

LEVY v. GAUSE et al.*

(April 25, 1904.)

SPANISH GRANT—CONFIRMATION—WHEN TITLE PASSES—VENDOR AND PURCHASER—TAX DEED —CURING DEFECTIVE RECITALS — INSUFFICIENT DESCRIPTION—PRESCRIPTION.

1. Where a Spanish grant, based on settlement and cultivation, was confirmed by Act Cong. May 4, 1826, c. 35, 4 Stat. 159, and the tract of land was subsequently surveyed in accordance with the statutes, and the survey was examined and approved by the Surveyor General of Louisiana in the year 1856, but the patent did not issue until the year 1873, held, that the title passed on confirmation of the survey, and was not held in abeyance until the patent issued. See Jopling's Case, 32 South. 243, 107 La. 522 (affirmed by United States Supreme Court, 24 Sup. Ct. 214); Gonsoulin's Heirs v. Gulf Co., 116 Fed. 251, 53 C. C. A. 31.

2. Where a vendor is in actual possession of a tract of land, and sells the same by notarial act, possession is vested in the vendee by virtue of the conveyance, and no physical act in taking possession is necessary. Ellis v. Prevost, 13 La. 230.

3. Defective recitals in tax deeds are cured by the constitutional prescription of three years. See Simoneaux Case (recently decided by this court) 36 South. 328, ante, 221.

4. Where the description in a tax deed is insufficient to identify the land sold, nothing passes by virtue of the tax sale. Improvement Co. v. Fasnacht, 17 South. 800, 47 La. Ann. 1294; Scott v. Parry, 32 South. 188, 108 La. 11.

5. Defendants and their authors, having held possession of most of the tract in dispute under well marked and recognized boundaries for more than 40 years, are protected by the prescriptions of 10 and 30 years.

(Syllabus by the Court.)

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Fred D. King, Judge.

Action by Leopold Levy against George H. Gause and another. From a judgment for plaintiff for a part of the relief sought, plaintiff appeals, and defendant Gause joins in the appeal. Modified.

Benjamin Moore Miller and Branch K. Miller, for appellant. Saunders & Gurley, for appellees.

*Rehearing denied May 29, 1904.

LAND, J. This is a petitory action to recover a tract of land situated in the parish of St. Tammany, known as the "De La Gautrais Grant," and also as section 38, in the Greensburg land district, containing 1,230 acres.

Plaintiff alleges title from Marie Louise de la Gautrais, to whom the United States issued a patent in February, 1873. Plaintiff further alleged that defendants had illegally and wrongfully taken possession of said tract of land within five years preceding the date of the institution of his suit under some pretended title, unknown to plaintiff, but invalid and null because it did not emanate from the lawful owner.

Plaintiff, reserving the right to sue for revenues and damages, prayed for judgment decreeing him to be the owner of said tract of land, with all the improvements thereon, and ordering him to be put in possession of the same.

The answer of Gause admits that the title was vested in Marie Louise de la Gautrais, widow Gonsoulin, derived by grant from the Spanish government prior to the year 1803.

The answer further avers that said grant was confirmed by act of Congress in 1826 (chapter 35, 4 Stat. 159); that the grantee obtained a certificate in 1827, and in 1831 an order to survey and locate her claim to include 1,280 acres; that in 1853 an amended order of survey issued, under which the tract was, in 1856, duly surveyed and located, and the plat and field notes examined and approved by the Surveyor General of the state of Louisiana.

The answer further avers that from the date of said approval, August 8, 1856, the title of said grantee to said tract of land became perfect and absolute, although the patent did not issue until February 26, 1873.

This defendant claims title in himself to about three-fourths of the tract in dispute by conveyances and tax sales and by the prescriptions of 10 and 30 years.

Defendant Provost adopted the answer of his codefendant as far as applicable, and set up title from Cornelius Cooper, by authentic act passed in 1883, to 140 acres of the tract in dispute. This defendant also pleaded the prescription of 10 and thirty years.

Defendant Gause further pleaded the prescriptions of 3, 5, and 10 years in support and confirmation of the tax titles set up in his answer.

The case was tried before the Honorable Fred D. King, of the civil district court of the parish of Orleans, vice Hon. James M. Thompson recused.

The trial judge handed down a written opinion, and rendered judgment in favor of plaintiff for 137 acres of the Tally tract, occupied and claimed by defendant Gause, but rejecting plaintiff's demand as to the remainder of the grant.

Plaintiff has appealed, and defendant Gause has joined in the appeal, praying that the judgment be amended so as to reject plaintiff's demand in toto, with costs in both courts.

It was admitted that plaintiff acquired title in 1901 from the sole heirs of the original grantee and patentee, Louise de la Gautrais.

It follows, as a necessary consequence, that defendants must show title by prescription.

The patent issued in 1873, and this suit was instituted in the latter part of the year 1901. It is contended by the plaintiff that the tract was not severed from the public domain until the patent issued. If this be true, prescription did not run against the government, and less than 30 years elapsed between the date of the patent and the date of the institution of this suit.

Defendants contend that the title of the government terminated in 1856, when the survey and plats were approved by the Surveyor General of Louisiana.

The trial judge sustained this contention, citing Gonsoulin's Heirs v. Gulf Co., 116 Fed. 251, 53 C. C. A. 31, and Jopling v. Chachere, 107 La. 522, 32 South. 243.

In the first case the Circuit Court of Appeals, Fifth Circuit, held that, where an unsurveyed Spanish grant was confirmed by act of Congress, the grantees acquired full title as soon as the survey was approved by the Surveyor General of the state of Louisiana, and that the patent subsequently issued thereon was merely evidence of title.

In Jopling's Case this court held that title passed on confirmation by act of Congress, or on confirmation of survey, where a survey was necessary, and was not held in abeyance until a patent issued.

The title of Marie Louise de la Gautrais originated in a Spanish confirmation of a British title, based on inhabitation and cultivation from 1775. The particular tract of land was surveyed in 1810 by a Spanish surveyor.

In 1825 the United States register and receiver recommended the confirmation of the claim, and it was confirmed by act of Congress in 1826. In 1827 a certificate and order issued to Marie de la Gautrais for 1,280 acres. In 1831 an order of survey issued, but was not executed.

In 1853 this order was amended, and a survey of the claim ordered, to include the original improvement. The survey was made in 1856, and on August 8th of that year was examined and approved by the Surveyor General of the state of Louisiana. In 1873 the patent issued. It recites that the claim was confirmed by act of Congress of date of May 4, 1826 (chapter 35, 4 Stat. 159), "to a tract of land containing twelve hundred and thirty and twenty-seven hundredths of an acre," and also recites and incorporates the survey, plat, and field notes of 1856 "on file in the General Land Office," together with the certificate of the Surveyor General of Louisiana.

The patent remises, releases, and quit-

claims unto Marie Louise de la Gautrais, widow Gonsoulin, the tract of land described in the said survey.

The patent was therefore not a grant of title from the United States, but evidence of the confirmation by act of Congress of the title derived from the Spanish government.

This case is covered by the principles announced in the Jopling Case and the Case of Gonsoulin's Heirs, already cited. Our decision in the Jopling Case was recently affirmed by the Supreme Court of the United States.

Harpin de la Gautrais was the original claimant. Settlement had been made on the tract as far back as 1775. In 1825 proof of settlement and cultivation was made before the register and receiver of the land office at St. Helena Court House. The plat of survey made in 1856 shows no house or habitation on the tract. It, however, shows that one of the boundary lines ran through a small field called "Hutchinson's Field," and that there was a logging railroad extending from a point on Pearl river through and beyond the tract. The inference is that in 1856 no person was in actual possession of the land in dispute save the occupant of the "Hutchinson Field," which extended beyond the boundary line.

The locus in quo as it existed at the date of the institution of this suit is shown by the plat annexed to this opinion.

Defendant Gause claims tracts Nos. 1, 2, and 3, and defendant Provost claims tract No. 4.

The evidence shows that many years ago these four tracts were surveyed, and were for a long time possessed by different claimants under separate inclosures and boundary lines.

Defendant Provost, in 1883, purchased 140 acres out of the fourth tract from Cornelius Cooper, claiming to be the owner. The deed was by authentic act, and was duly recorded in the year 1884. Provost testified that the

Coopers were in possession of this fourth tract about five years before the late Civil War, or longer, and continued in possession after the termination of that conflict. He further testified that since his purchase in 1883 he has cut wood and paid taxes on the land.

Hutchinson, a son of the man who possessed the Hutchinson field, shown on the United States plat of 1856, testified that his father claimed the Cooper place under a sale from Cooper to witness' grandfather, but Cooper entered suit and recovered the land; that Cooper took possession of the place when witness was quite a lad, built a house thereon, and lived there as long as witness stayed in that part of the country. Hutchinson, when he testified, was 52 years old. He has known the tract No. 4 since

1856. He testified that his father claimed, held, and used the property according to the surveyed lines, which still can be traced, and that the division lines between the fields were indicated by fences and ditches.

Mrs. Provost, aged 58 years, testified that Cooper lived on the tract when she was a small girl. Mr. F. Provost, aged 63 years, testified that there was a house on the Cooper tract long before the late Civil War. Dupriest, aged 65 years, testified that Jared Cooper lived on the tract in 1858 or 1859, and continued to live there until some time in the 70's, when witness left the neighborhood; that Jared Cooper claimed to have acquired the property at tax sale; that Cornelius Cooper was one of the children of Jared Cooper; and that division lines between the tracts were well marked.

It cannot be doubted that Jared Cooper had corporeal possession of the tract for many years, and the law presumes that this possession continued in him and his heirs until his son Cornelius Cooper transferred the property to Antoine Provost in the year 1883. The sale by notarial act vested the possession in the purchaser, and no physical act in taking possession was necessary. Ellis v. Prevost, 13 La. 230.

The vendee since 1883 has manifested his intention of retaining possession as owner by the payment of taxes, by the cutting of wood, and by protecting the land against trespassers. He possessed under his title for 18 years prior to the institution of this suit, and there is no occasion for his eking out his possession by adding that of his vendor, which may or may not have been in bad faith. We think that the defendant Provost has acquired title by the prescription of 10 years.

We are also inclined to the opinion that said defendant and the Coopers have possessed as owners for more than 30 years. The possession of the elder Cooper commenced prior to 1861, and more than 40 years prior to the institution of this suit. The evidence shows that he recovered the land by some sort of legal proceedings from Hutchinson, and that he possessed under certain recognized boundaries. His son, Cornelius, was in possession in 1874, and in 1883 sold the whole tract of 140 acres to defendant Provost.

This brings us to the consideration of the title to the three remaining tracts, designated on the plat as "No. 1, Wardsworth Tract," "No. 2, Tyree George Tract," and "No. 3, Tally Crawford Tract."

These three tracts are separated by old boundary lines run by a surveyor, as shown by ancient posts and marks on trees. The testimony leaves no doubt that the said lines were surveyed and marked several years prior to 1861, and that the cultivated portions of the several tracts were separated by fences.

## No. 1. Wardsworth Tract.

One Wardsworth was in possession of this tract prior to 1861. He was succeeded in possession by one Turner. In June, 1866, Turner and wife sold the tract to Nannie Maury, wife of Dabney H. Maury. In 1894, 170 acres of the tract were sold at tax sale for delinquent taxes due by Maury, and were purchased by defendant Gause. In 1896 the remainder of the tract was sold for similar taxes, and was also purchased by same defendant. The tax deeds were duly recorded. The purchaser exercised acts of ownership over the property, which was not in the possession of any third person. The purchaser's possession was constructive, if not actual. The deeds are prima facie evidence of valid tax sales. The recitals show that the property was sold to enforce payment of delinquent taxes due by D. H. Maury for certain years. Assessments in the name of Maury are implied. There is no evidence that there was no assessment for the years stated in the deed. Taxes were due on the

property, and, in the absence of evidence showing that they were paid, or that there was a duplicate assessment, the tax sales stand confirmed by the constitutional limitation of three years, which bars all other cases of nullity. See Simoneaux Case (recently decided), 36 South. 328, ante, 180.

The descriptions in the two tax deeds are sufficient to identify the tracts sold. In the first deed the land is described with reference to the boundaries of G. H. Gause's property, meaning tract No. 2 in controversy. In the second deed the Spanish grant miscalled "Locodor" is identified with the "De la Gautrais" grant by the references to West Pearl river, French Branch, the Pettis land, and to the first tax deed, also by the fact that it is not shown that there is any other Spanish grant in that vicinity that would answer to the calls.

### No. 2. Tyree George Tract.

Defendant Gause claims title from the heirs of Tyree George and wife, who in separate deeds conveyed their respective right, title, and interest in the same tract described by metes and bounds; also by name of "Pettis Bluff," and as the same property inherited from their deceased parents. These deeds were executed in 1874.

Defendant Gause moved on the George tract in 1873. A short while before, Francois Provost, a son-in-law of George's, lived on the place. The widow of George married a man named Pettis, and in this way the place got the name of "Pettis Bluff." In 1873 there was an old house or residence on the tract. Gause has resided on this tract since 1873. Hutchinson testified that as far back as he can remember Pettis lived on tract No. 2, and that the owners of the several tracts possessed under well-recognized boundary lines, shown by surveyors' marks and blazes through the woods and fences through the cleared land.

Mrs. Francis Provost, daughter of Tyree George, and 58 years of age, testified that she was born on tract No. 2, and lived there until she married at the age of 20 years.

Crawford testified to the existence of the marked boundary lines before 1861, to possession under the same by the several occupants, and that after the marriage of the widow George to Pettis tract No. 2 was known as "Pettis Bluff."

Plaintiff's counsel contends that the description in the deeds do not cover tract No. 2, because it calls for parts of sections 32 and 5. The United States plat shows that this territory was surveyed and sectionized in 1820, and necessarily the survey of 1856 embraced parts of several sections previously surveyed, and among them sections 32 and 5.

Tract No. 2 embraces parts of both of said sections, which were included in the De la Gautrais grant. The land is further identified by the name "Pettis Bluff," and the property inherited from George and wife. The further contention that the deeds merely evidenced quitclaims has no force, because they conveyed the interests of the heirs, who were joint owners, to property belonging to the successions of their parents, which had been inherited by the vendors. There was no exclusion of warranty.

We are of the opinion that the title of Gause is good by the prescriptions of 10 and 30 years.

### No. 3. Crawford Tract.

In 1859 Mrs. S. E. Joiner and husband sold to George Crawford and Wm. P. Crawford the following described property: 320 acres of land lying and being situated in the parish of St. Tammany, state of Louisiana, on the west bank of West Pearl river, and bounded as follows, to wit: North, by lands belonging to the heirs of Tyree M. George; south, by lands belonging to the heirs of Wm. Hutchinson; east, by West Pearl river; and southwest, by public lands—together with all the buildings and improvements thereon,

etc., which property was acquired by the vendor from Mrs. Tally by Act passed July 30, 1859.

The above is an accurate description of tract No. 3; it being remembered that Hutchinson first occupied tract No. 4, which subsequently passed into the possession of Cooper.

The sale from Mrs. Joiner to the Crawfords also included the N. ½ of the S. E. ¼ and the S. E. ¼ of the N. E. ¼ of section 1, T. 19, R. 14.

Defendant Gause acquired, in 1895, at tax sale, the following described property "assessed in the name of Thomas R. Crawford, 80 acres of land, more or less, a portion of the Locador Spanish grant in section 38, township 9, range 15 east, on West Pearl river, bounded S. by Antoine Provost and Herwig, W. by western boundary of said Spanish grant."

No northern or eastern boundary is given.

In 1887 defendant Gause purchased from Mrs. A. Christie Crawford the following described property: "A certain tract of land, containing 80 acres, more or less, being northern or upper half of a tract of land bought by the late George M. Crawford and W. P. Crawford from Caswell Joyner, situated in the parish of St. Tammany. The said tract herein conveyed being bounded on the north by lands of George H. Gause, on which he now resides, on the east by West Pearl river and Old river, on the south by the lower half of the said tract referred to, and west by public or unknown lands; being the same property acquired by me, vendor, from my said late husband, said William P. Crawford, and through him."

We find in Gause's testimony the statement that Mrs. A. Christie Crawford was the "widow of Wm. Crawford, son of George Crawford," and that Tom Crawford was the "son of George Crawford."

George Crawford's testimony is to the effect that his father and brother lived on the tract, and divided it between them; that after his brother William's death his sister-in-law sold her interest or claim to Gause, and that his father's portion went to his mother and her children.

It further appears from Geo. Crawford's testimony that his father left 16 children, and that one of them (Thomas) bought in the property at tax sale. The widow and heirs of George Crawford, the father, never transferred their interest to any one.

It appears, therefore, that the upper half of the tract was in possession of Wm. P. Crawford, as owner, and that his title was recognized by his father, mother, and co-heirs. The right of the widow to dispose of this portion has never been disputed by the family.

The other half was claimed by the widow and heirs of George Crawford. The purchase at tax sale by one of the heirs did not change the title. But we find no difficulty in arriving at the conclusion that the tax sale of 1895, at which Gause purchased, was void for uncertainty of description. The quantity is uncertain, being 80 acres, more or less, and the northern and eastern boundaries are not given.

The tract was purchased as containing 320 acres, and its actual area is 217 acres. The intent was to assess and sell about 80 acres in the southern portion of the tract. There is no guide by which the thing sold can be ascertained. The tax sale passed no title. See Scott v. Parry, 108 La. 11, 32 South. 188; Improvement Co. v. Fasnacht, 47 La. Ann. 1294, 17 South. 800.

We are therefore of the opinion that the defendant Gause took nothing by the said tax sale.

The judge a quo rejected Gause's claim to the upper portion of tract No. 3, acquired from Mrs. Crawford, and recognized him as the owner of 80 acres acquired at the tax sale of 1895.

In our opinion, the judgment of the district

court should be amended by recognizing Gause as the owner of the upper half of said tract, and rejecting his claim to the lower half.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed as to tract No. 3, known as the "Tally Tract," and more particularly described in said judgment, and it is now ordered and decreed that the plaintiff be recognized as the owner of the lower or southern half of said tract, and that the defendant Gause be recognized as the owner of the upper or northern half of said tract, and that, as thus amended, said judgment appealed from be affirmed; plaintiff and appellant to pay the costs of appeal.