No. 8225.

HEIRS OF SELF VS. B. F. TAYLOR.

| | |
|---|---|
| 33 | 769 |
| 46 | 339 |
| 33 | 769 |
| 48 | 304 |
| 33 | 769 |
| 107 | 252 |
| 33 | 769 |
| 114 | 211 |
| 33 | 769 |
| f120 | 547 |
| 33 | 769 |
| 123 | 155 |
| 124 | 860 |

Minors, whose property was sold without legal authority, can recover it without tendering the price of sale to the purchaser.

They are not estopped from revendicating the property because, in the partition of their father's succession, at their majority, they received the proceeds of such sale, when they were not informed of the fact connected therewith. Their action, under such circumstances, cannot be considered as a ratification of the sale.

They have ten years after their majority, during which they are in time to revendicate the property.

The purchaser of the property sold in such case is not entitled to an offer of restitution of the price, as a condition precedent of the revendication, but he may claim the amount in reconvention.

The law does not consider the fact that a purchaser did not examine into the titles by which his vendor acquired the property as an evidence of bad faith.

The purchaser may be one in good faith, though his vendor acquired the property in bad faith.

APPEAL from the Eighteenth Judicial District Court, parish of Tangipahoa.  *Thompson, J.*

*Jas. H. Muse, E. F. Russell* and *J. M. Wright* for Plaintiffs and Appellees :

Where A intermarries with C, surviving spouse of a father of a family of children, who are minors, and by private act of sale disposes of a portion of the landed estate belonging to the succession as his individual property, in which his wife intervenes, relinquishing her liens and privileges upon the property, as the property of the husband, in favor of his vendee, the act of sale is not an administrative act; and so far as the succession is concerned cannot be regarded as any sale at all. It cannot be regarded by the law and public justice in any other light than as an act of spoliation. C. C. 2452.

Such an act is absolutely null and void, and not susceptible of ratification. 4 L. 269; 15 An. 569; Carmena vs. Blanes, 16 An. 245; Rev. C. C. 2272; 6 M. 412; 4 An. 229; 5 N. S. 655·

A vast difference exists in our jurisprudence between the sales of succession property in which minors are interested, where they are made of necessity to pay the debts of the deceased, and those cases in which no such necessity exists. In the former case, the debts of the ancestor must be paid, and the minor must submit, of necessity, to the reduction of his inheritance *pro tanto*. In the latter case, it can only be sold in pursuance to the forms of law. Rev. C. C. 341 *et seq.* 1044.

Those only who have purchased at a sale to discharge the ancestor's debts, can demand repayment of the price from the minors. Daquin vs. Coiron, 8 N. S. 625.

Where there are several warrantors, who, together with the defendant, have stated their several grounds of defense in their answers, they will not be permitted to shift their grounds of defense to a contradictory one, in order to frustrate the action of the law upon the issues thus made, nor a portion of them adopt the answer of the last warrantor, which is in direct conflict with their own grounds of defense as pleaded and contended for on the trial. The doctrine that "the last warrantor is the real defendant" cannot be enforced against the settled rules of practice and of pleading, and in disregard of the law of estoppels. Greenleaf, vol. 1, p. 28, sec. 22; 18 An. 136; 6 M. 549.

49

*Ellis & Ellis* for Defendant and Appellant:

Where property claimed by the heirs of a deceased person was sold by their co-tutor and tu-trix, and the price paid was the full value of the land, and was carried into the partition of the succession of the deceased, and distributed among his heirs, they cannot recover the property without alleging and proving a previous tender or offer of restitution, even if deceased was the real owner, and the property sold at private sale, and without the probate order. 24 An. 603; 30 An. 174, 891, 1233.

Where the price of property, claimed by the heirs as belonging to their deceased father, was regularly partitioned among them, and was received by them after becoming of age, such receipt of the price is a ratification of such sale, whether regularly or irregularly sold, and estops them from ever attacking the same. R. C. C. 1811, 1816, 1875, 2228. Williams vs. Springfield, 15 An. 535.

In such case the heirs cannot recover without allegation and proof of a formal tender *ante litem motam*, whether the suit attacking such sale be a direct attack, or an indirect one, in the form of a petitory action. 30 An. 174, 891; 24 An. 603; Hen. Dig. p. 1020, No. 19.

The last warrantor is the real defendant, and after his answer has been filed, the defendant and other warrantors may avail themselves of any special defense or estoppel which he may urge against the plaintiffs. Millaudon vs. McDonough, 18 La. 103–108; Vascou vs. Smith, 2 An. 828, 829.

A certificate of a certificate of entry is not the best evidence, the original not being accounted for, and such a document will not support a petitory action. 9 An. 289, Basseron vs. McRae.

Where, by plaintiffs' own showing, a joint entry of land was made by A and B, with nothing to show the respective interests, and plaintiffs claim title by conveyance to their ancestor from A, with nothing to show that B ever parted with his interest in the land, it will be held that there is an outstanding title in B of equal character with that of A, and as the *onus* is on the plaintiffs, they will be defeated in their petitory action for the land. See Williams vs. Springfield, 15 An. 535. They must fix, by proof, the exact amount of their interest; failing in which, they will be dismissed.

In the petitory action, the defendant, on the general issue, can compel plaintiff to make out a perfect title, and the plea will not prevent defendant from availing himself of any defense, which his warrantor may afterwards plead as a special defense or estoppel against the plaintiff. Chewning vs. Johnson, 5 An. 678; Sassman vs. Aime, 9 M. 267.

Proof of their ratification of the sale, which plaintiffs attack indirectly by a petitory action, will be admitted in favor of defendant and warrantors, where the last warrantor alleges an act of partition, which shows plaintiffs' receipt of the price, by its date and particulars. Such ratification defendant can also offer in rebuttal of plaintiffs' claim of title, and in support of his own allegation of a just title, and to support the plea of prescription, the latter pleas following the general issue.

---

The opinion of the Court was delivered by

LEVY, J.    The heirs of Self brought this petitory action to recover from B. F. Taylor a certain tract of land, situated in the parish of Tangipahoa. They allege that they acquired the land by inheritance from their deceased father, who acquired it from David D. Hunter by authentic act of 31st January, 1837. They allege that the said Taylor is in the unlawful possession of a part of said tract of land and, being in unlawful possession thereof, " without right or title thereto, and in bad faith and in fraud, knowing that the same was the property of petitioner, whose title was extant and of record as required by law, he is indebted

unto them in the full sum of five hundred dollars per annum, from the date of his said unlawful possession of said property, that being the value of the rents and revenues arising therefrom." They pray that they be adjudged to be the lawful owners of the property described, and placed in f ll and quiet possession thereof, and for judgment against said Taylor for the sum of $500 per annum for the rents and revenues arising therefrom. The petition was filed June 6th 1871.

The defendant, B. F. Taylor, for answer, alleges that he acquired the property mentioned in the petition by inheritance from his deceased sister, Miss L. E. Taylor, who acquired the same by purchase from John Coleman by authentic act, dated February 24th, 1859; that said property contains twenty-nine acres instead of thirty-nine acres, as is erroneously stated in the petition; that his said sister purchased the same for a valid consideration and in good faith from said Coleman, and in like good faith transmitted the same to respondent as her heir; that since the death of said sister, respondent has sold various portions of said property to divers persons, who are now in the possession and enjoyment of the same as owners, and were so from and at the time of the institution of this suit; that a portion of said property has been dedicated by respondent for public uses, as a street, to the corporation of Amite City, which dedication has been accepted by said corporation and is now, and has been long prior to the institution of this suit, in the enjoyment by said corporation and the general public as a highway; that, after deducting the said several parts and portions so sold and dedicated to public use as aforesaid, there remains about fifteen acres of which respondent is the owner and possessor; that of the portions so sold and dedicated and disposed of by him, he is not in possession and disclaims all ownership or interest therein; that, as to the portion so remaining to respondent, he resides thereon with his family; that, as owner in good faith he has made extensive and valuable improvements on the same, amounting in the aggregate to the sum of $4830; that this respondent and his said sister had had uninterrupted possession as owners in good faith of said property for more than ten years from the institution of said suit. He calls in warranty John Coleman, his said sister's vendor, to defend and maintain respondent's title and indemnify him for all losses or damage he may sustain by reason of any defect of the same; that should plaintiffs be decreed to be the owners of said property, then, as owner and possessor in good faith, he should be entitled to and recover the value of his improvements from said plaintiffs. He further pleads the prescription of ten and three years.

Coleman, called in warranty, in his answer, admits that he sold the property mentioned in the petition to Miss L. E. Taylor, by act of 24th February, 1859, and admits his obligation as warrantor of the land, as

mentioned in the answer of defendant, B. F. Taylor.  He alleges that, in good faith and for a sufficient consideration, under a title translative of property and perfect in form, he acquired said land from Champion P. Bailey and Melissa, his wife, by an authentic act of sale of date January 5th, 1854; that under said title, as owners in good faith, he and his vendee, said defendant, have continuously, notoriously and publicly possessed said property since said last-mentioned date, and he pleads against plaintiffs the prescription of ten and three years in favor of defendant's rights in the premises.  He denies the title of plaintiffs to said land in dispute or to any portion thereof.  He alleges, if the certificate produced by plaintiffs under the prayer for oyer, is true (which he expressly denies), then there is an outsanding title in one William Killenbarger, with equal grade with that claimed by plaintiffs, to at least one-half of the tract sued for, and he, therefore, pleads that, by their own declarations and exhibit they are not the owners of the same, and that, to this extent, they declare no valid cause of action.  He avers that plaintiffs are the children of Mrs. Melissa Bailey, one of warrantor's vendors.  He calls in warranty said Champion P. Bailey and Mrs. Melissa Bailey, his wife, and prays that there be judgment in favor of defendant, Taylor, quieting him in possession; but should plaintiffs be decreed to be the owners, he prays that defendant's demand for improvements be maintained, but that defendant's demand against this warrantor for the purchase price of said land be rejected by reason of the use and benefit had by defendant from the enjoyment of the same for so long a time.  He prays for judgment, *in solido*, over and against the said Bailey and wife, for the purchase price paid by him to them, viz: $250, with interest from the date of their sale to him, and for such judgment as may be rendered against him.

C. P. Bailey and wife, called in warranty, in his answer admits his sale to Coleman, but denies that said wife signed the act as vendor; avers that said Coleman, when he purchased the land from said Bailey, did so with a full knowledge of the rights and claims of plaintiffs, if any they have, and that respondents are not liable as warrantors in this action. Further answering, they aver that respondents were tutrix and co-tutor of the plaintiffs, and that as such they have paid to the several plaintiffs all the funds, rights, credits and effects of the succession of Raleigh Self, deceased, as fixed by a partition of said succession, and are relieved from all liability to plaintiffs on account of said succession.

This *resumé* of the pleadings exhibits fully the grounds of action and defences in the suit.

One of the points dwelt upon by counsel for defendant and appellant in their brief, and which is elaborated with great earnestness, is, that plaintiffs cannot recover " without alleging and proving a previous tender or offer of restitution of the purchase price," etc., and another

that, "where the price of property claimed by the heirs, as belonging to their deceased father, was regularly partitioned among them and was received by them after becoming of age, such receipt of the price is a ratification of such sale, whether regularly or irregularly sold, and estops them from ever attacking the same."

In regard to these points, this case bears great similarity to that of Heirs of Wood vs. Nicholls, recently decided by us and not yet reported. In that case we held: "The evidence satisfies us, that the plaintiffs were, and must have been, ignorant of the fact that defendant was the purchaser." In this case, Bailey, the vendor of Coleman, who was co-tutor of the minors Self, testifies: "When I made the settlement with them (the heirs) I never advised them how the money came, more than it was their father's estate. I never told them that it was the proceeds of the land sold by their mother and myself." In the partition under which the settlement of their father's succession was made with those heirs, there is no description of the land, or of the quantity, the name of the purchaser, or its situation; nothing identifying it with that herein sued for. The sale from Bailey to Coleman, on which defendant and his warrantors rely as the origin of their title, was made by Bailey in his individual capacity, with his wife's renunciation. No reference is had therein to this land as belonging to the succession of Self or his heirs, and as to these heirs it could not operate as a divestiture of any title that they had thereto. It is not contended that there was any order for the sale of the minors' interests.

In the case above cited, Heirs of Wood vs. Nicholls, we said: "After a somewhat exhaustive examination, we find no instance of its application (i. e. the antecedent tender) in a case like the present, where the nullity of defendant's title is absolute, resulting from the active violation of a prohibitory law made to regulate defendant's conduct in a fiduciary capacity, and where such violation was disguised and concealed from plaintiffs, who received what was paid to them in ignorance of such violation, and who only discovered the fact years after the payment." * * * "The title of plaintiffs has never been divested. Their right to recover the property is absolute and not dependent upon any antecedent restitution. Defendant's right to recover does not spring from any contract which is annulled, but is an equitable claim for money paid by him for the benefit of plaintiffs. We discover no principle of equity requiring plaintiffs to tender this money to defendant before asserting their absolute title to property belonging to them and held by defendant as a mere possessor without title. All that equity could possibly require would be to permit him to set up his claim in reconvention, which would not be denied. Finally, it appears from the pleadings and proofs, that defendant is, in the sense of the law, a possessor in bad

faith, responsible for fruits and revenues during more than ten years. In asserting such claim there was no equity or necessity for plaintiffs to make a tender of the very much smaller amount received by them. 14 An. 597; 13 An. 189." The reasons given in that decision are to our minds applicable to and decisive of the question of estoppel raised herein, and the plea cannot be sustained. Our brother of the court a qua, in his clear and cogent reasons for judgment, has, in our opinion, seized and properly disposed of the legal questions involved.

In the judgment rendered, the title of plaintiffs is maintained, they claiming through their father from Hunter. The title from Hunter was acquired by notarial act of sale dated January 31st, 1837, under which title they held without dispute until Bailey sold to Coleman in 1859, more than ten years. Self's vendor sold to him the entire tract, and there is nothing to show that he knew of any defects in Hunter's title. Says the judge a quo: "Hunter may have satisfied him that he had acquired Killenbarger's interest, or Self may have never learned that Killenbarger ever had any interest. The law does not consider the fact that a purchaser did not examine into the titles by which his vendor acquired the property an evidence of bad faith, 4 La. 274; 5 La. 242. The Self heirs have shown a complete title to the land by reason of possession under title from Hunter for more than ten years." Although Coleman did not sign the act from Bailey to him, he assented thereto. He derived no title from Bailey and "is a possessor in bad faith, but there is nothing to show that the property yielded any revenues while in his hands." We agree with the District Judge that nothing shows bad faith on the part of Taylor or his sister, from whom he claims to have derived the property. On the contrary, the evidence clearly indicates that he held in good faith, and that he so held for more than ten years. The prescription of ten years holds good against the two plaintiffs, Levi and Josephine Self, more than ten years having elapsed between the dates of their reaching majority and the institution of this suit. "Prescription was suspended against the other four plaintiffs by reason of their minority. Catherine, Charity A., Louisiana, and Mary E. Self are entitled to recover four-sixths of the property sued for, and defendant to retain two-sixths. As possessor in good faith defendant retains the revenues up to the date of the institution of this suit. Since that date, he must return four-sixths. Defendant must recover of plaintiffs their pro rata of the value of the improvements. The rents of the property from the date of the institution of the suit until the rendition of the judgment by the lower court, i. e. from June 6th, 1871, to June 23d, 1880, say nine years, amount to $3444 or $382 66⅔ per annum. There was judgment to this effect, and also in favor of the defendant, Taylor, decreeing that the four last mentioned heirs should pay to him four-sixths of $6280, the value of the im-

provements placed upon the property in question by said defendant, and rejecting the demands of Levi Self and Josephine Self at their costs, and decreeing that no writ of possession issue in favor of the plaintiffs, Catherine, Charity A., Louisiana, and Mary E. Self, until they have paid or tendered to said defendant the amount herein decreed to be due him for his improvements, and that no fi. fa. issue in favor of defendant until he shall have delivered or tendered, to the last four named plaintiffs, possession of their portion of the land in controversy. It was further decreed, that B. F. Taylor recover of his warrantor, John Coleman, four-sixths of $675, the amount of his purchase price and four-sixths of the costs of this suit, and that said Coleman recover of C. P. Bailey, his warrantor, four-sixths of $240, that being the sum paid by him to Bailey for said property and four-sixths of the costs of this suit; that B. F. Taylor pay four-sixths of costs of this suit, and rejecting the demand in warranty of Coleman against Bailey at his (Coleman's) costs.

The plaintiffs in their answer to this appeal pray for an amendment of the judgment of the lower court, by reducing the amount allowed to defendant Taylor for improvements from $6280 to $4830, on the ground that the last mentioned amount is that claimed by said defendant in his answer and in his reconventional demand, and that he is not entitled to recover a greater amount than is thus claimed in his prayer in reconvention. We think the judgment should be amended as asked by plaintiffs. The defendant in his answer set up his claim in reconvention and was therein plaintiff. He distinctly alleged the value of the improvements, and fixed it himself at $4830, for which sum he prayed for judgment against the defendant in reconvention. We know no law or rule of pleading under which he can recover a greater amount than is claimed in his petition and which would justify a judgment for an amount *ultra petitum*.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended, in this: that the defendant B. F. Taylor recover of the above named plaintiffs (Catherine Self, Charity A. Self, Louisiana Self and Mary E. Self) four-sixths of four thousand eight hundred and thirty dollars, the value of improvements placed upon the property in question by said defendant, B. F. Taylor, instead of the sum of $6280 as allowed in said judgment; and that the judgment appealed from be, in all other respects, affirmed; appellants to pay the costs of both courts in the proportion decreed by the lower court.

Rehearing refused.