SOMMERVILLE, J.
Mary J. Liles, Martha Farris, Taylor Biekham, Annie Roach, L. C. B. Biekham, F. D. Biekham, Era Hartley, and Katie Martin sue defendants for an undivided one-fifth interest in and to certain *653 tracts of land, which are particularly described in plaintiffs’ petition, the first two claiming as the grandchildren, and the last six as the great-grandchildren, of Samuel Gerrald, deceased.
The defenses are:
(1) A plea of estoppel, based upon the allegation that the plaintiffs had received their full share of the estate of their ancestor, and were without further hereditary right.
(2) A plea of prescription of 10 years acquirendi causa.
(3) A plea of prescription of 30 years acquirendi causa.
(4) A plea of prescription of 30 years under article 1305 of the Civil Code.
The district judge overruled the defenses, and gave plaintiffs judgment, from which decree the defendants and warrantors all appealed.
Samuel Gerrald bought this land from C. S. Croom and John D. Bickham on July 9, 1860, and was living on the same at the time of his death in 1864. He died intestate, leaving a widow, Luretta Smiley Gerrald (who was a second wife, and who bore him no children), and the following children and grandchildren, issue of his former marriage with Katie Floyd, who had died many years before; Samuel C. Gerrald, Katie Peacock, Eliza Mays, and Patience Fortner, children, and John C. and James G. Gerrald, grandchildren, sons of Everett Gerrald, deceased.
A short time after the death of Samuel Gerrald in 1864 a partition of his real estate, about 214 acres, was made between Luretta Smiley Gerrald, widow in community, and the above-named children and grandchildren, the widow getting as her share 25 acres and the buildings thereon, and the children getting each an undivided one-fifth and the two grandchildren getting each one-tenth of the remaining 189 acres.
Patience Fortner, one of the above-named daughters of Samuel Gerrald, died intestate in the year 1884, leaving three children, who lived to maturity, Mary J. Liles, Martha Ellen Farris, and Caroline Bickham, who accepted their mother’s succession unconditionally by the two former joining in an act of sale to the latter of a piece of land inherited from their mother, the first two being two of the plaintiffs, and the last one being the mother of the remaining plaintiffs in this case. C. C. arts. 988, 989.
Caroline Bickham died intestate in the year 1885, leaving as her only heirs Taylor, Annie, L. C. B., F. D., Era, and Katie Bickham, who are the last six of the above-named plaintiffs in this case, and who were minors at the time of their mother’s death.
Neither plaintiffs nor their ancestors have ever parted with their title to this land.
In 1868 R. L. Pitts, a witness to the above-mentioned act of partition, bought all the “right, title, and interest” of Eliza Mays, Katie Peacock, and Samuel C. Gerrald in and to this land. And defendants, claiming under him, plead 10 and 30 years’ prescription, contending that their vendor, Robert L. Pitts, had acquired a prescriptive title by possession.
Pitts did not purchase the interest of Patience Fortner, the ancestor of the plaintiffs, or the interest of the heirs of Everett Gerrald. As already stated, the heirs of Patience Fortner bring this suit to recover her interest from the defendants, who hold under R. L. Pitts.
In a former suit, reported in 128 La. 1099, 55 South. 688, John Gerrald, the sole heir of Everett Gerrald, his brother having died without issue, sued to recover his interest in this property from those holding under Pitts, and there was judgment in his favor, the court holding that Pitts had not been in continuous possession for 30 years, and that his possession was in bad faith, overruling the prescription of 10 and 30 years.
The district judge, in a well-considered opinion, reviewed the evidence at length, and, *655 as in the former casé, overruled these pleas of prescription of 10 and 30 years, and also the plea of estoppel, and gave judgment for the plaintiffs for their interests in this land.
In answer to the first point of defendants in their brief, viz. that plaintiffs have already received their full share of the estate of their ancestor, and therefore are without any further hereditary right, we shall quote from the opinion of the district judge, who heard the witnesses. He said:
“The act of partition between Luretta Gerrald, surviving widow in community of Samuel Gerrald, and his heirs, Patience Fortner, Katie Peacock, Eliza Mays, S. Chesley Gerrald, and the two children of Everett Gerrald, deceased, represented by Isaac Fortner, is a complete answer to the plea of estoppel filed in this case, for the reason that the act of partition itself declares that the appearers ‘do by these presents choose, empower, and instruct S. D. Pitts, James Christian, and John Parnell to make a partition of the land, stock, and other property of which the said Samuel Gerrald, deceased,' died seized of, except the slave property, between the aforesaid heirs and the said Luretta Gerrald, the widow of the said Samuel Gerrald, deceased, and their award shall be received by the parties as a final settlement of the same.’ Then immediately follows: ‘Witness our hands this 25 Jany., 1864. [Signed] Luretta Gerrald. her Patience Fortner. Katie X Peacock. S. W. Mays for his wife Eliza Mays. S. C. Gerrald, his by S. W. Mays. Everett Gerrald by Isaac X mark. Fortner. Witnesses, R. L. Pitts, Etheldred Peters.’ The award of the commissioners immediately follows, dividing the real property between the widow and all the heirs of Samuel Gerrald, deceased, as well as the stock. In concluding the award, the commissioners distinctly state: ‘The rest we divided between the widow and the heirs satisfactorily, except the negroes as aforesaid, with which we had nothing to do.’
“Then follows the signatures of the commissioners, and also of the witnesses Robert L. Pitts and Ethelred Peters. Then begins a new caption: ‘State of Louisiana, Parish of Caddo.’ We the undersigned, being called upon by the parties as named before yesterday, hereunto annexed, have proceeded to divide out the slaves as named in the inventory of the estate of Samuel Gerrald, deceased, and the result of the division is as follows, viz.: [giving the five several allotments.]’
“It is expressly stated by the parties to this act of partition of the slaves: ‘And it is further understood that what is coming from one to the other is satisfactory to the parties, to be arranged to suit themselves hereafter. And to testify that all has been done satisfactorily, each one has subscribed his name to this agreement and division with the undersigned commissioners the day and year first above written.’ As the heirs of Samuel Gerrald expressly agreed to divide the land and the stock first, ¿nd as this was done before the slaves were divided, the court fails to see wherein or whereby Mrs. Patience Fortner in any way waived her right to her portion of the real estate, when she had already received her interest in the same before the slaves were allotted. The division of the real estate is expressly declar-ed to have been ‘satisfactory’ in the act of partition itself. It is true that Mrs. Patience Fortner received a slave whose value exceeded her share by $800. The two children of Everett Gerrald did likewise. While Samuel Gerrald received two slaves valued at $1,500, the remaining three heirs received .slaves valued at $2,000, $3,000, and $3,500. Yet this difference in the value of their respective lots was then and there adjusted, and it was expressly understood, and put in black and white as part of the act of partition itself: What is coming from one to the other is satisfactory to the parties to be arranged to suit themselves.’ Each one of the heirs actually participated in the division of both real estate and slaves. This partition was made on January 25, 1864, and, as there is no evidence to the contrary, it is presumed, after a lapse of 51 years, that these heirs satisfactorily arranged the difference in the value of their slave lots ‘to suit ■themselves.’ The plea of estoppel is, therefore, not sound and is overruled.”
The land was partitioned on January 25, 1864, and the partition closed; and each heir-was vested with the ownership of his or her interest in the land. The next day, January 26, 1864, the same commissioners, by a subsequent request and by a subsequent act, partitioned the slaves, and the heirs stated in the partition, as quoted by the district judge:
“What is coming from one to the other is satisfactory to the parties to be arranged to suit themselves.”
*657 [1] This was in effect an acknowledgment of a personal obligation by each heir who had received more than his share of the slaves to pay the other heir or heirs the excess until they were even. The succession was closed, and whatever obligation remained was a personal obligation between the heirs. With this stipulation they signed the act, declaring that they were satisfied. Whether these amounts were ever paid is not known. The slaves were freed the following year, leaving all, doubtless, in great confusion. But, whether these obligations were ever paid or not, they afforded no ground or legal reason for refusing to any of the heirs or descendants their legal. interest in the land which had already been divided and had vested in each particular heir.
Patience Fortner inherited from her parents one-fifth interest in the 189 acres of land. It was awarded to her by this first act of partition. There is nothing in the second act taking away her ownership, and it remains in her and her heirs.
The second point made by counsel for defendants is that R. L. Pitts acquired title to this land by having possessed it for 10 years under a title translative of property. Two of the four requisites for the acquisition of property under the 10-year prescription, as laid down under article 8479, O. C., are: (1) Good faith on the part of the possessor; (2) a title which shall be legal and sufficient to transfer the property.
[2] Admitting for the present that R. L. Pitts' had possession of this land for 10 years, did he acquire title which on its face is translative of property, and was he in good faith? R. L. Pitts’ deed conveys to him “all the right, title, and interest” of the vendors to this land, said vendors being only three of the heirs of Samuel Gerrald (Mrs. Fortner and the heirs of Everett Gerrald not having signed). The act does not specify what their interest was. R. L. Pitts and his three vendors lived in Arkansas at the time of the sale to him; but he had lived near the Gerrald family, in Louisiana, and was well acquainted with all the children. He was living near the family when he witnessed the act of partition in 1864 whereby Patience Fortner and Everett Gerrald, represented by his two sons, received each an undivided one-fifth interest in this land. In this act of partition John Gerrald was referred to as a child. R. L. Pitts, knowing that one of these heirs was a minor and could not, under the law, dispose of his interest in this land, entered upon it as the owner of three undivided fifths, or as a tenant in common with Patience Fortner and John Gerrald, knowing well that he did not have title to the whole of it. And therefore he was not a possessor in good faith, as this court held in the case of Gerrold v. Barnhart et ah, 128 La. 1099, 55 South. 688, which case involved the same identical issues as this case does except as to* the plaintiff, stating that R. L. Pitts held this land in bad faith, because he was a witness to the act of partition, and knew that these interests of plaintiffs were outstanding.
[3] Defendants attempted to strengthen their title by calling as a witness the widow of R. L. Pitts, who had testified in the 128 La. case (55 South. 688). After being put on the stand several times, she finally said that Mays, one of the vendors, had told her husband, R. L. Pitts, that the two heirs who did not sign the act of sale had been settled with. The trial judge properly disregarded this testimony. It was exceedingly weak. Title to real estate must be in writing and recorded. Parol testimony cannot be heard to •prove title to real estate. And the interest of the minor would have had to have been sold by order of court.
The three vendors granted and conveyed “all their right, title, and interest in a *659 certain tract or parcel of land belonging to Samuel Gerrald, deceased,” etc. They did not pretend to sell the land described, but “all their right, title, and interest” therein; and it was their three undivided fifths in that land which Pitts bought.
That Pitts did not own all of the land in question is further shown by the testimony of the witness Posey, who testified that Pitts told him that he did not, and that was why he left it and did not build a good home thereon. The conversation between Pitts and this witness was about 1884 or 1885.
The warranty contained in the act is:
“At the time of the delivery hereof the said party of the first part is the lawful owner of the premises above granted and seized thereof in fee simple absolute and that they will warrant and defend the above-granted premises in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, forever.”
The vendors granted their right, title, and interest, and they warranted that which they had granted. The words “above-granted premises” were doubtless used designedly.
The word “premises” is sometimes used to indicate land or improvements, or both. And counsel argue that, as the deed was passed in Arkansas, and vendors and vendee were all therein declared to be residing in Arkansas at the time, that “premises” meant land.
[4] The law of Arkansas is not before us; and, as the sale was of real estate in this state, the terms used in the act will be construed according to the laws and usages of this state. C. C. art. 481. The act declared that the thing granted and conveyed was the right, title, and interest of the vendors, and they warranted that which they “granted.”
[5] Reference to Words and Phrases, Second Series, shows the word “premises,” when used in deeds of sales, generally refers to that which precedes the habendum. Numerous authorities are therein cited.
“The technical meaning of the word ‘premises’ in a deed is all that precedes the habendum.” Volume 6, p. 5509.
“The premises of a deed is that part of a deed that sets forth the numbers and names of the parties, recitals necessary to explain the transaction, the consideration, and the certainty of the grantor and the grantee in the grant.” Volume 6, p. 5509.
“When the word ‘premises’ is used in the habendum of a deed, it has a fixed meaning, and that means the thing granted as described in what precedes the habendum.” Volume 6, p. 5509.
“The popular phrase ‘premises’ is sometimes used for land; but, where the habendum of a deed is of the ‘above-described premises,’ it means what the deed purports to convey.” Volume 6, p. 5510.
[6] Coming now to a consideration of the matter of prescription, it is not shown when Pitts returned from Arkansas to Louisiana, but he appears to have taken physical possession of one of the three fractional sections of the land in which he owned an undivided three-fifths interest in or about the year 1871. He took possession as owner of the three undivided fifths, and as co-owner with the other owners of the remaining undivided two-fifths, and that possession was never changed by him by notice to his co-owners or in any other way. He thus possessed in their names, and for them.
C. C. art. 3498:
“When a person has a title mid possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits.”
C. C. art. 3441:
“Those who possess, not for themselves, but in the name of another, as farmers, depositaries and others who acknowledge an owner, cannot acquire the legal possession, because, at the commencement of their possession, they had not the intention of possession for themselves but for another.”
C. C. art. 3446:
“Even if a person who commenced his possession of an estate for another, should entertain the intention of no longer holding for that oth *661 er, but for himself, yet shall he still be presumed to hold possession for the person for whom he originally took it.”
C. C. art. 3489:
“When a person’s possession commenced for another, it is supposed to continue always under the same title, unless there be proof to the contrary.”
C. C. art. 3490:
“The circumstance of having been in possession by the permission or through the indulgence of another person, gives neither legal possession nor the right of prescribing.
“Thus, those who possess precariously, that is, by having prayed the master to let them have possession, do not deprive him thereof, but, possessing by his consent, they possess for him.”
[7] Co-owners, or owners in indivisión, cannot acquire title to property by prescription as against each other, unless the possession is clearly proved to be hostile.
In the case of Simon v. Richard, 42 La. Ann. 842, 8 South. 629, it is said in the syllabus :
“It being shown that the property claimed was once jointly owned by the heirs, who inherited jointly from their ancestors and their brother and sisters, the condition of indivisión and joint ownership will continue, unless it be satisfactorily proven that the parties have parted with their title.
“Joint owners cannot acquire title to property by prescription as against each other.”
In the case of Litton v. Litton, 36 La. Ann. 348, it is said:
“The defendant first went into possession more than 30 years before the institution of this suit in 1877, but he moved away from it twice, and his possession has not therefore been continuous. * * * No complaint was ever made because of his exclusive possession of the land, or of his use of a few acres for tillage. * * * Defendant built a dwelling upon it many years ago, which seems partially to have gone to decay. * * *
■ “During the whole of this occupancy, the plaintiffs never troubled themselves about the taxes. The defendant paid them. * * *
“He occupied the land before their eyes, improved it, paid all charges upon it, and preserved it from the 'adverse claim of Patterson through the law suit without their aid. They never evinced any desire to claim their patrimony until near 40 years after their ancestors’ death. They are entitled to it now. * * * ’’
There are authorities to the same effect found in the reports of the Supreme Court of the United States and in those of other states.
“The rights of such cotenant are not barred in equity by failure to take active steps for their enforcement, where he did not waive them, and the person in possession knew of such rights, and that they were not abandoned.” Van Ormer v. Harley, 102 Iowa, 150, 71 N. W. 241.
“It is true that the entry and possession of one tenant in common of and into the land held in common is ordinarily deemed the entry and possession of all the tenants; and this presumption will prevail in favor of all until some notorious act of ouster or adverse possession by the party so entering into possession is brought home to the knowledge or notice of the others. * * * ” Clymer v. Dawkins, 3 How. 674, 11 L. Ed. 785.
“That one tenant in common may oust his co-tenant, and hold in severalty, is not to be questioned. But a silent possession, accompanied with no act which can amount to an ouster, or give notice to his cotenant, that his possession is adverse, ought not, we think, to be construed into an adverse possession.” McClung v. Ross, 5 Wheat. 116, 124, 5 L. Ed. 46.
“The possession of his cotenants was his possession. They held it for him until he was ousted. That this is a settled rule * * * is not denied.” Consolidated Silver Mining Co. v. Taylor, 100 U. S. 57, 25 L. Ed. 541.
The following excerpts are taken from a very exhaustive note on Adverse Possession found in 109 Am. St. Rep. 609:
“Every cotenant has the right to enter into and occupy the common property, * * * provided in so doing he does not exclude his fellow tenants or otherwise deny to them some right to which they are entitled as his cotenants, and, as he has the right to take and continue m possession, they, on their part, may safely assume, until something occurs of which they must take notice, and which indicates to the contrary, that the possession taken and held by him is so held as a cotenant, and hence is in law the possession- of all the cotenants, and not adverse to any of them. The presumption is that the posses *663 sion of a tenant in common is not adverse to his cotenants.”
“Under a Quitclaim Deed. — If made by a co-tenant, it, according to the view of the decided preponderance of authority speaking upon the question, so far as the statute of limitations is concerned, operates as would a conveyance in terms restricted to the grantor’s moiety or interest. He who enters into possession under it is not deemed to enter under a conveyance of the whole, and his ouster of his cotenants must be proved and brought home to their knowledge in the same manner as if the conveyance had purported to be of a moiety only.” Citations page 613.
And on page 614:
“In each of these eases, however, the conveyance was simply of all the grantor’s right, title, and interest, and it was held that a deed could not be even color of title beyond what it purports to convey, that these deeds were merely releases of the interest of the grantors, and that no ouster of the true owner would arise.”
And on’the same page:
“Defendants must show acts equivalent to a denial of the rights of the cotenants.”
The possession by Pitts of the land owned and held in indivisión with his co-owners or owners in indivisión, or as a tenant in common, cannot be construed as an adverse possession to that of the co-owners. See Cent. Dig. Tenancy in Common, §§ 42, 56, 51; Decennial Digest, same topic, § 15, setting forth the following cases:
“Where two have real estate set off to them jointly, the possession of one, claiming the whole, cannot be construed as being adverse to the other, within the meaning of the statute of limitations.” Brooks v. Fowle, 14 N. H. 248.
“The payment of taxes by defendant on land while it is held in cotenancy with plaintiff operates to strengthen a title by adverse possession against plaintiff.” Christy v. Spring, etc., 97 Cal. 21, 31 Pac. 1110.
“As the possession of one of two tenants in common is the possession of both, the fact that one of them has paid all the taxes and made improvements does not render his possession adverse to the other.” Sanford v. Tucker, 54 Ind. 219.
“An adverse holding as against other cotenants is.not presumed, but must be affirmatively proved.” Buck v. Williams, 57 Tenn. (10 Heisk.) 264.
“The possession of a tenant in common is not presumed to be adverse to his cotenant until proved so to be.” Buckmaster v. Needham, 22 Vt. 617.
“The fact that a tenant in common was. in sole-possession of the common property, and built-improvements and paid taxes on it, is not sufficient to establish adverse possession as against his cotenant.” Garcia v. Illg, 14 Tex. Civ. App. 482, 37 S. W. 471.
“A tenant in possession may, after notice to-his cotenants, assert an adverse holding.” Boyd v. Boyd, 176 Ill. 40, 51 N. E. 782, 68 Am. St. Rep. 169.
. “The statute of limitations does not begin to. run in favor of one cotenant of land in possession against another cotenant thereof until actual ouster by the former, or some other act or-acts on his part amounting to a total denial of the right of the latter, and until notice or knowledge of the act or acts relied on as an ouster is. brought home to him.” Decennial Digest, vol. 19, Tenancy in Common, § 15(2).
“A purchaser of the interests of some of the-tenants in common of real estate must, to claim title by adverse possession as against the other-tenants, show an adverse and exclusive possession under a claim of title to the whole brought home to the knowledge of the other tenants.”' Trenouth v. Gilbert, 63 Cal. 404.
“A verbal assertion or declaration of entire ownership by a tenant in common can be of no-avail to establish an adverse possession, unless-brought home to the knowledge of the cotenants.” Warfield v. Lindell, 30 Mo. 272, 77 Am. Dec. 614.
“Adverse possession by one cotenant as against another is not shown by mere possession, payment of taxes, and appropriation of the rents and profits.” McMahill v. Torrence, 163 Ill. 277, 45 N. E. 269.
“Where a tenant in common had sole possession of land for 30 years, using it as his own, and knowing the tenancy existed, but making no public claim of entire ownership, his possession was not adverse, and limitations did not run against his cotenants, who had no knowledge of the tenancy.” Bader v. Dyer, 106 Iowa, 715, 77 N. W. 469, 68 Am. St. Rep. 332.
The record contains no evidence which, could be construed as an ouster of these-plaintiffs by Pitts. He sold a right of way over a portion of the land to a railroad company in 1895, and a small piece of the land in 1896. But these sales were not notified: *665 to plaintiffs. Besides, the sales were well within 30 years before this suit was filed in 1914.
Pitts erected a small house on the land, and he cultivated some 15 or 16 acres; but those acts were not inconsistent with his tenancy in common with plaintiffs. The letter could not in reason object to his use ■of the land in such ways. The land is mostly in its primeval state.
But Pitts abandoned the land in 1884 and went with his family to live in Texas. He returned from Texas, and again abandoned the place in 1887, never to return to it. He Appears to have paid taxes for 1895 and some subsequent years. The house was burned in 1900. A. L. Pitts, son of It; L. Pitts, testified that the place was cultivated for 2 or 3 years after 1887, when it was abandoned by his father, and that it became an old, uncultivated field. • He is supported in his description of the condition of the field by the testimony of a cousin and by W. E. Martin, surveyor, and the latter’s assistant.
[8] The prescription of 30 years was thus interrupted, if it ever had a beginning. The plea was properly overruled.
In the 30-year prescription the title does not enter into the consideration; for all rights acquired result from possession as owner alone. Article 3500, C. C., says:
“The possession on which this prescription is founded must he continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.”
And article 3503 says:
“How favorable soever prescription.may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it.”
In interpreting the word “continuous,” as used in article 3500, it is said in the case of 36 La. Ann. 349:
“The defendant first went into possession more than 30 years before the institution of this suit in 1877, but he moved away from it twice, and his possession has not therefore been continuous.”
“There must be a continuous, uninterrupted, public and unequivocal possession for 30 years to acquire ownership of immovables without title or good faith, under C. C. art. 3500.” Gerrold v. Barnhart, 128 La. 1099, 55 South. 688; 2d Dec. Dig. Adv. Poss. § 13.
[9,10] One must not only possess, but must possess as owner; and the evidence shows that R. L. Pitts stated to Sam Posey, after he had left this place and gone back to Clear Lake farm, which Mrs. Pitts says was in 1887, that he did not own all of this land.
"The burden of proof to establish * * * prescription rests on him making the plea.” Chapman v. Morris Bldg. & Land Improvement Ass’n, 108 La. 283, 32 South. 371.
“To obtain title to land by prescription of 30 years, the intention of possessing as owner as well as the possession of the land must be proven, and it is not enough to show cultivation of the land.” Clemens v. Meyer, 44 La. Ann. 390, 10 South. 797; Cent. Dig. Adv. Poss. § 69.
“These remnants of pillars were barely noticeable, and in all likelihood were never noticed by any one before the arising of the present litigation; and consequently they could hardly be held to constitute the vestiges of a building, such as article 3502 [C. C.] has reference to.” Moore v. M., La. & T. R. R. & S. S. Co., 126 La. 898, 53 South. 41.
“One claiming title by prescription must show uninterrupted open possession, under a claim of ownership, for 30 years.” Brewer v. V. & M. Y. R. R., 128 La. 544, 54 South. 987.
It is shown by defendants that R. L. Pitts, by public act, duly recorded, sold to R. D. Pitts the southwest fractional one-fourth of section 19 on’ March 20, 1901; and R. D. Pitts and his vendees plead the prescription of 10 years against plaintiff’s claim.
The title to R. D. Pitts was apparently acquired by him in good faith, it is in proper form, it is legal, and it is sufficient to transfer the property; and he and his vendees have been in civil possession more than 10 years since. Having acquired in good *667 faith and. by a just title, R. D. Pitts and his vendees are protected by the prescription of 10 years. C. C. art. 3478, et seq.
R. L. Pitts, vendor, was in physical possession as owner of three undivided fifths of the land, and in physical possession of the remainder as co-owner. He therefore had actual possession of the whole property at the time he sold a part thereof to R. D. Pitts. There was a delivery of possession to R. D. Pitts when he. acquired title by notarial act.
“The law considers the tradition or delivery of immovables, as always accompanying the public act, which transfers the property. Every obstacle which the seller afterwards interposes to prevent the taking of corporeal possession by the buyer, is considered as a trespass.” C. C. 2479.
“No physical act in taking possession under a sale by notarial act, is necessary. The intention of the purchaser, which the law presumes, coupled with the power which the act of sale gives, vests the possession in him. The right is taken for the fact, and he is seized of the thing corporeally.” Ellis v. Prevost, 13 La. 230.
“The sale by notarial act vested the possession in the purchaser, and no physical act in taking possession was necessary.” Levy v. Gause, 112 La. 789, 36 South. 684.
Although R. L. Pitts took actual possession of the land in bad faith, and subsequently, as owner, sold part of it to R. D. Pitts, more than 10 years since, the latter, being in good faith, has a good title, which is protected by the prescription of 10 years. A purchaser may be in good faith though his vendor was. in bad faith. Self v. Taylor, 33 La. Ann. 769 ; Blair v. Dwyer, 110 La. 332, 337, 34 South. 464.
The claim of plaintiffs against R. D. Pitts and his vendees must fail.
[11] The remaining defense of defendants, prescription of 30 years under article 1305, C. C., refers to suits for partition, and it must fail.
Originally the actions were petitory and for a partition; but, on exception by some of the defendants, the action for partition was dismissed. The judgment was acquiesced in by all parties, and the suit was tried as a petitory action alone. The partition suit could not have been tried in this proceeding as to those defendants who had not excepted, because those owners who had had the partition suit dismissed would not have been before the court on that issue.
[12] The judgment appealed from appears to include that portion of ground which fell to the Widow Gerrald in the partition between her and the heirs of Samuel Gerrald. This was an error. Plaintiffs did not sue for any portion of that land.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by excluding therefrom that portion of land actually sold by R. L. Pitts to R. D. Pitts on March 20, 1901, by public act before Benj. E. Teat, notary, and by R. D. Pitts to Edward J. Pitts and William E. Barnhart, which was partitioned between the last two named, and by further excluding therefrom a parcel of land described as beginning at the edge of the lake at the southwest corner, and running north with Pitts’ line, thence east to include the buildings, thence south to lake so as to include 25 acres more or less situated in Caddo parish, and, as thus amended, it is affirmed. Costs of the district court and of this court are to be paid by defendants, except R. D. Pitts and Edward J. Pitts. The costs of the last two named are to be paid by plaintiffs.
PROVO STY, J., takes no part, not having heard the argument.
DAWKINS, J., concurs in the decree.
See dissenting opinion of O’NIELL, J., 82 South. 742.