MILLER, Judge.
This is a concursus proceeding instituted by plaintiff, Southeastern Public Service Company (successors to Aluminum Company of America), as the owner-operator of certain mineral leases affecting land in St. Martin Parish. The revenues allocable to the land in dispute have been deposited in the Registry of the Court and all claimants cited to assert their respective claims thereto.
The numerous defendants can be divided into two groups, known as the “Hypolite Barras Group” and the “Charles Barras Group”. The Hypolite Barras Group claim six-sevenths (%) of the property and the Charles Barras Group claim the ownership of the entire tract. The trial court rendered judgment in favor of the Hypolite Barras Group on the grounds that a co-owner cannot prescribe against fellow co-owners. The Charles Barras Group has appealed to this court.
We agree with the decision of the trial court.
There is no serious dispute as to the facts. Hypolite Barras purchased the forty (40) acre tract in question many years ago while he was married to Clemence Barras, and neither ever disposed of this property. Of their marriage seven children were born and they had no other children and never adopted anyone. Clemence Barras died in 1893 and Hypolite Barras died in 1902.
It is not disputed that one of the seven children, Charles Barras, took possession of this 40 acre tract over 60 years ago and remained in possession of it until his death and that his heirs (Charles Barras Group) have continued to possess the property until the present time. The possession extended uninterruptedly for a period in excess of 60 years. It is upon this possession that the Charles Barras Group base their claim to a prescriptive title of 30 years.
The Hypolite Barras Group, composed of the heirs of the other six children of Hypolite and Clemence Barras, oppose the claim of the Charles Barras Group on the principle that a co-owner cannot acquire prescriptive title to property he owns in in-división with others.
The principal witness for the Charles Barras Group was one of Charles’ sons, J. Sylvain Barras, age 66. He testified that his father was in possession of this 40 acre tract as long as he can remember which he stated was approximately 60 years. He claimed his father fenced the property and had dug a deep well on the property and that there was a tenant house in existence .there for many years. No one ever used the property except his father who paid taxes on the property during all of this period. He stated that they cut and sold timber on the property and that many of his father’s relatives lived in the neighborhood and never made any adverse claim against the property nor did anyone else ever claim the property.
Also testifying for the Charles Barras Group was one Paul Davis, an 83 year old gentleman who was formerly a tenant of Charles Barras on this particular tract of land. He testified that no one had ever claimed the land but Charles Barras. The Charles Barras Group produced a third witness by the name of Darrell Price who had purchased timber on the property in 1949.
No witnesses were presented by the Hyp-olite Barras Group.
The Charles Barras Group offer as further evidence of adverse possession the claim that their father had purchased this property, however there was no deed to confirm this record ownership. They urge the fact that this 40 acre tract was not listed in the inventories of the successions of Hypolite and Clemence Barras and claim this evidences the fact that Charles Barras *300 was the owner of the property. They advance the case of Barras et al. v. Barras, 111 La. 284, 35 So. 553 (1903), as evidence of the fact that Charles Barras owned the property. This involved a suit by six of the children of Hypolite and Clemence Barras attacking an October 11, 1895 sale from Hypolite Barras to his son Auguste Barras, purporting to sell- all the properties which Hypolite Barras owned, including movable and immovable property. The subject 40 acre tract was not described in this deed which the Charles Barras Group claims confirms the fact that Charles Bar-ras owned the property at the time. The trial judge attributed these omissions to in-advertencies. Although we are not necessarily prepared to reach the same conclusion, this certainly would be one explanation. However the significance of these omissions is problematical. They offer mere negative proof, insufficient to establish title In Charles Barras.
The Charles Barras Group also contends that a boundary action brought against Charles Barras in the early part of 1900 by an adjoining landowner, shows that he was publicly recognized as the owner of the property. This certainly evidences the fact that Charles Barras was in public possession of the property. That fact is undisputed. It does not prove he was possessing the property adversely and hostile to his co-owners. The principle that one cannot prescribe against his co-owner is clearly stated in the case of Lee v. Jones et al., 224 La. 231, 69 So.2d 26 (1953), as follows:
“The jurisprudence is well settled that, as a general rule, owners in indivisión cannot acquire title by prescription against each other. Litton v. Litton, 36 La.Ann. 348; Simon v. Richard, 42 La.Ann. 842, 8 So. 629; Dew v. Hammett, 150 La. 1094, 91 So. 523; Hill v. Dees, 188 La. 708, 178 So. 250 and Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369. In order for one coowner or coheir to prescribe against the other, his possession must be clearly hostile to the rights of the other and, in such instances, it is necessary, in order to commence the running of prescription, that notice be given by the former to the latter of his intention to hold, animo domini, all of the common property. Ethredge v. Watts, 137 La. 686, 69 So. 95; Liles v. Pitts, 145 La. 650, 82 So. 735; Gill v. Robinson, 11 Orleans App. 226 and Arnold v. Sun Oil Company, supra. Occupancy, use, payment of taxes and the like will not suffice.”
In support of their prescriptive title the Charles Barras Group cite the following: Succession of Seals, 243 La. 1056, 150 So.2d 13 (1963), Dupuis v. Broadhurst, 213 So.2d 528 (La.App. 3 Cir. 1968), Lafitte, Dufilho and Co. v. Godchaux, 35 La.Ann. 1161 (1883), and Fried v. Bradley, 219 La. 59, 52 So.2d 247 (1951).
In both the Seals and Dupuis cases, the court found the possession to have been hostile because the possessing co-owner was possessing under a deed which served as notice to the co-owners that he intended to possess adversely. The Charles Barras Group produced no deed to indicate to the co-owners that the possession was adverse or hostile.
It is quite true that there is some rather strong language in the Lafitte case, which, taken out of context, would give some support to the Charles Barras Group, to-wit:
“The genius of our law does not favor the claims of those who have long slept on their rights, and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement.”
We subscribe to these thoughts, but they are not analogous here. The Lafitte case involved an entirely different subject matter and has no relation to the question of whether one co-owner can prescribe against *301 another. It concerned a pledge of capital stock. Likewise the Fried case did not concern itself with co-owners possessing against other co-owners but rather with former owners attempting to attack the validity of a deed upon which ownership and possession of the latter owners was based.
The case of Southern Natural Gas Company v. Naquin, 167 So.2d 434 (La.App. 1 Cir. 1964) is analogous to the instant case. In the Naquin case the defendants were divided into two groups, the LeBoeuf heirs and the heirs and assigns of Francois Na-quin. The LeBoeuf heirs claimed an undivided nine-tenths (%o) interest in the land in section 52 as the descendants of nine of the ten children of Jean LeBoeuf and his wife. The heirs and assigns of Francois Naquin claimed full ownership of the land in section 52 by virtue of 30 years adverse possession. The wife of Francois Naquin was the tenth child of Jean Le-Boeuf. It was undisputed that this possession by Naquin was actual, physical, uninterrupted, peaceful and for a period beginning in 1906 and lasting about 50 years. Francois Naquin and his wife and children farmed part of the land in section 52, cut wood therefrom, trapped and crawfished thereon and granted numerous mineral leases throughout the years. The court pointed out that had not the wife of Francois Naquin been a child of LeBoeuf and his wife and therefore a co-owner, there would be no question as to Naquin’s 30 year prescriptive title. Had he been a stranger the land would plainly have been his. All ten of the LeBoeuf children had accepted the succession of their parents by the execution of various deeds and mineral leases which constituted a tacit acceptance. The court discussed the Naquin reasoning as follows:
“Having thus accepted the successions of their parents, none of the ten children of Jean LeBoeuf could acquire a prescriptive title against any of the others without first giving unequivocal notice to the others that his or her future possession would not be for the benefit of all heirs, but would be adverse to all. Therefore, Odile LeBoeuf Naquin, wife of Francois Naquin, could not by mere possession acquire any prescriptive title against her sisters and brothers. But could Francois Naquin? We think not.”
The Naquin court went on to quote from the case of British American Oil Producing Company v. Grizzaffi, 135 So.2d 559, 564 (La.App. 1 Cir. 1961) as follows:
“As correctly pointed out by learned counsel for the Austins and conceded by counsel for the Robinsons, it is the well settled jurisprudence of this state that owners in indivisión cannot acquire by prescription the right of their co-owners in and to property held in common. Litton v. Litton, 36 La.Ann. 348; Simon v. Richard, 42 La.Ann. 842, 8 So. 629; Dew v. Hammett, 150 La. 1094, 91 So. 523; Hill v. Dees, 188 La. 708, 178 So. 250; Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369; Atlantic Refining Co. v. Golson, La.App., 127 So.2d 341.
“It is likewise admitted by all concerned that an exception to the foregoing rule is recognized in those instances wherein the adversely possessing co-owner gives notice to his owner or owners in common that he intends to possess contrary to the common interest. Under such circumstances one owner in common may prescribe against a party owning in indivisión with him provided such possession be clearly hostile and notice be given thereof. Ethredge v. Watts, 137 La. 686, 69 So. 95; Liles v. Pitts, 145 La. 650, 82 So. 735; Gill v. Robinson, 11 Orleans App. 226 and Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369.
“In assessing factual circumstances to determine whether a particular case falls *302 within the exception rather than the general rule it has been held that mere occupancy, use, payment of taxes and similar acts of possession will not suffice to constitute notice of adverse possession to an owner in common. Lee v. Jones, 224 La. 231, 69 So.2d 26; Alba v. Smith, 228 La. 207, 81 So.2d 863; Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481; Banks v. Yarborough, La.App., 104 So.2d 283.
“Registry of a new title does not ipso facto constitute notice of a co-owner that the possession of his owner in common has become adverse. John T. Moore P. Co. v. Morgan’s Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22.”
Plainly stated, Charles Barras never gave notice to his co-heirs of his adverse ownership, so as to constitute an exception to the rule of non-prescriptibility among co-owners.
We find that the trial court was correct in denying the prescriptive title of the Charles Barras Group.
Co-counsel for defendants-appellees contend that they should be given an additional fee for services rendered to those absentee defendants in connection with the appeal. Considering the research and time involved they are entitled to an additional fee. Accordingly each of the two co-counsel of defendant-appellees appearing on this appeal shall be awarded the sum of $500.00 each in addition to the trial court fee of $250.00, and these fees shall be taxed as costs, to be paid from the mass on deposit.
The decision of the trial court is affirmed. Defendant-appellants shall pay all costs of this appeal.
Affirmed.